Case number 24-2131, Vernaliz Meredith Perez et al. v. Federal Emergency Management Agency et al. At this time, would first counsel for the appellant Perez et al. please introduce himself on the record to begin. Good morning to you all. This is attorney Vicente Santopoli on behalf of the appellants, together with attorney Angel Perez. We will address... We will request first... We have four minutes in my turn. We would like to save one minute for rebuttal. You can go around the house. So, I will address issue number two of the appeal brief. Regarding that issue, we sustain that essentially that appellants... Appellants sustain that this court abused the discretion because it didn't follow the rules of the procedure, especially Rule 55A. For instance, in case 21-1230, there was an order from the district court allowing time for appellants to file a second amended complaint and allowing time for FEMA to file a response brief. Appellants complied with the court order, whereas FEMA failed to do so. In case 21-1261, after the court's ruling regarding FEMA's motion to dismiss, FEMA never answered the amended complaint. So, we have that normally FEMA failed to file an amended complaint in one case, but it failed in the other case as well. Then, more than one year elapsed without FEMA answering either complaint and went on to file a motion for summary judgment. Given that procedural scenario... They did file an answer, but during that year, isn't it correct that they did participate in the discovery process? Isn't it true that FEMA participated in the discovery process? Yes, it's true. Alright, and so they showed up at the depositions and they asked questions on behalf of their client. Yeah, but that was after he didn't file a response brief to the amended complaint. I understand, but the problem is that the rule says fail to answer or otherwise defend. And I'm trying to figure out why this litigation conduct doesn't fall within the otherwise defend category. Well, according to Rule 12 of the FEMA procedure, that's what refers to the motion that has to be filed before answering a complaint. That's what all of my brief refers to. And that's the motion for failing to... Or subject to a lack of statutory jurisdiction or regarding the summons, insufficient summons. And FEMA filed a motion to dismiss in Case 12-1261 that was granted in part and denied in part by the District Court. So after the rule, after the court ruled that motion, FEMA never answered the complaint. But why didn't they otherwise defend? We're saying that when the rule says otherwise defend, it refers to the motion that has to be filed before the party answered the complaint. So is there something that says the conduct outside of the preliminary motions that you're referring to can't be considered otherwise defended? Yes, that's... The thing is that there should be then a motion for formal judgment. But in this case, there was a court order saying in time, a time frame, for FEMA to file a responsive brief. FEMA failed to do so, and then one year later... I just think, do you have any authority that shows that the conduct that they're identifying as otherwise defend doesn't count as that? No, it is our analysis of the Rule 12 of the Supervision. It says exactly... Do you have any case law that interprets that to say the other litigation conduct cannot fall into the category of otherwise defended? No, we went straight to the Rule 12 when it says... A motion asserting any of these offenses must be made before a plea, if a responsive plea is allowed. We're referring to that. That's not the default judgment. 55A talks about otherwise defended. So, our job is to try to figure out when it talks about otherwise defended. Answer or otherwise defended. Or, as you said, violence of preliminary dispositive motion. What does otherwise defended mean? In Rule 55, you're relying on Rule 55. Yes. So, you've got to have some argument as to why what they did doesn't constitute otherwise defended. You seem to be saying we should deduce what that means from Rule 12. Right. Okay, but you don't have any case law saying that. No. Got it. Okay, thank you. Well, that's, I think, your time. Well, Counselor Perry, we're with you. Thank you.  Would the second Counsel please introduce himself on the record to begin? Good morning. My name is Andrew. I'm the biggest contributor for the plaintiffs' defense case. And with this court, this is a simple one. Employers work for a certain amount of time and never receive compensation. We're asking for compensation as plaintiffs. From whom? From... In this appeal, from whom? In this appeal in particular, we're claiming compensation from whoever employed... No, no, no, no, no. You have to name who it is. In this case, it's FEMA. It's FEMA. And Camp Iroquois is also on this. So, but the fact is, as the record shows, that Camp Iroquois doesn't have any money. And the fact that they don't have any money doesn't allow them to pay the wages that they owe. So, we're asking FEMA, because FEMA is the ones who have control. I know you have FEMA. And there was a judgment against you, a summary judgment, in favor of the non-FEMA party also, right? Yeah. Are you appealing that judgment? Yes. And do you make any separate argument in your brief as to why that judgment was wrong as to that employer? Because all your arguments seem to be focused on FEMA. Yeah, it is. But the first part of the brief addressed the issue of responsibility of the Fair Labor Centers Act, which is our contention in this case that both of our joint employers under the Fair Labor Centers Act should be responsible for the payment of wages. Yeah, I'm just trying to find where you're talking about the other party is supposed to be in your brief. There are more than I can disclose right now. The first part of the brief is discussed at the Fair Labor Centers Act conference. That's the part where we refer to both. What is your argument specifically as to the non-FEMA defendant? Non-FEMA defendants never – first of all, the court ruled that camaraderie and harmony is open, which is the other opinion in this case. That's TFCI. The non-FEMA defendant is a camaraderie person. Camaraderie is not an entity covered by the Fair Labor Centers Act. That's the rule. Did you have anything in your brief saying that's wrong? Yeah. Where? And the first argument is regarding Fair Labor Centers Act coverage. And I specifically argue that camaraderie is an enterprise under the Fair Labor Centers Act. The conclusion of this report is irrefutable. The brief states that both FEMA and camaraderie workers are joint employers under the Fair Labor Centers Act, under the statute, in this case, of adversity for persons. Just so I understand this, your sole argument for the ruling as to – was it TFCI? TCI. TFCI. TFCI. Your sole argument for why the ruling as to TFCI is wrong is based on its relationship to FEMA, making the two of them an enterprise employer. First of all, we argue in several occasions that the specific camaraderies never exerted influence. In your appeal brief to us. In your appeal brief to us as to the judgment below as to TFCI, your argument is that's wrong because they are all in the enterprise by virtue of their connection to FEMA. Not only that, I also argue that they comply with the enterprise criteria established in the Fair Labor Centers Act, which requires them to have a volume in excess of half a million dollars. And second, that they have two or more employees engaged in commerce, directly or indirectly. And it is our argument in the brief that they comply with both. So they are an enterprise under the Fair Labor Centers Act, and therefore they should be responsible for payment of wages. The main problem with camaraderies, and I would like to stress this out, camaraderies of all types have recognized that they own money, that they have the responsibility to pay wages. The problem is that they have this responsibility under a contract with FEMA. And FEMA never paid them, so they could not make the corresponding payment to the employees. So that's our contention. This is a job. So FEMA didn't pay them. Yeah, that's right. They have an agreement for more than $7 million. And at some point, FEMA decided not to continue to make the payments to camaraderies. And at that time, once FEMA refused to reimburse or pay camaraderies, they stopped paying the employees. But they continued the operation. That's the thing. They continued the operation until the end of the contract. The contract ended on August 3rd, and they continued to work, but they never received payment. And the whole idea of having employees work without receiving payment is hideous. And I would like to stress that out. It's not correct to have people who shout. It does not. We understand that. We understand that. We try to be open-ended here, though. Did FEMA pay Camp Iron Horse at some point, and Camp Iron Horse paid your clients, and then they stopped because FEMA stopped paying them? Yes, sir. Okay. And so Camp Iron Horse, you're saying, continued to perform the job responsibilities through your clients, but your clients never got paid? That's right. Okay. Getting back to the other defendant, FEMA, FEMA says that they're not responsible because they're not a joint employer and they're not engaged in an enterprise. All right, now tell us about FEMA. Well, FEMA, it is our contention that FEMA is a joint employer and that they exercise functional control, not firm control, but functional control over their operation. If we, if we, if we decide that we don't disagree with the district court's ruling that Camp Iron Horse was not an enterprise, can FEMA still be on the book? I'm sorry? Is joint, is the joint enterprise theory only viable against FEMA if we also find that Camp Iron Horse was part of the joint? No, no, no. So it's going to be dependent upon us somehow reversing both as the camp and as the FEMA. That's right. FEMA on its own is a public agency as defined by the Fair Labor Standards Act and it's covered. So if this court rules that they are a joint employer, they are responsible under the Fair Labor Standards Act. Notwithstanding any kind of joint enterprise. That's right. Under the joint employer theory, FEMA would be independently responsible for payment. That's right. Okay. Then the district court found that in terms of the elements for joint employer, FEMA was, was, didn't exercise supervisory or management responsibilities over your clients. Yes. Now what's wrong with that? The problem is that the district court emphasized conformalities and not an actual control. The fact of the case and the record will show is that no matter how payable is managed, once FEMA stops giving money, the employees stop getting paid. But that's not the test. I know it's not the test. No. I'm just saying that. I know it's not, but I don't deny that that's true. That's why you would like them to pay, but they have to meet the test. Yes. And that's not a part of the test. I think that the district court overemphasized conformalities and real issues here. First, let me explain this. Number one, in order to establish joint employment, you have to establish two things. Just whether an employer is acting directly or indirectly in the interest of the other. And we contested. This is the case. Because they have to be an employer to begin with. They have to be doing something vis-a-vis the employees. That is more than just providing funding. Yes. So what is the second part of the test? The second part is where the employees share control. And they control that. Under the economic reality test as established in BESA. Right. That's the test. And the test establishes that you have to argue. Right. And you point to the fact that there are certain maximum payments that can be made that FEMA establishes. They say, but there's so much discretion that's still left to the FCI that they don't meet that test. FEMA doesn't meet that test. What's your answer to that? My answer is that it's on the brief that FEMA satisfies functional control. And we follow the test established in BESA. For example, through contract documents and practice, FEMA controls how the employees work in several instances. For example, this is a case arising from a contract which was the result of a hearing in America. We know that. We know your clients didn't get paid even though they were exacted. So we got the sympathy factor. We're just trying to figure out legally what we can do, if anything. Well, the record shows several things. One of them is the fact that those who were working in the disaster centers were under the direct supervision of FEMA. And that's one of the arguments. Second, that they exercise some kind of supervision. And third, that they have records. Why do we argue that they have records? The district court said that in order to get one of these federal grants, there were guidelines that the recipient had to comply with. That they had to agree to do certain things, comport with certain filing requirements, establish certain wage parameters. And the district court said that's all that FEMA did in this instance. And what they did didn't go beyond that into any kind of direct management or control work for the employees. Your Honor, with all due respect, there is an email from FEMA. One of the federal employees stated that if people don't comply with certain requirements in the disaster centers, they will not be allowed to work. And at one point, they even sent people home because they didn't comply with the requirements that FEMA in the disaster center. When the court, when the district court concluded that they just supervised the contract, we're saying that that's departing from the criteria established at Baystate. Because the criteria on Baystate is based on actual, on the economic reality test. And the economic reality in this case is that they cannot function without the money from FEMA. And that's why we're connecting FEMA and temporary workers as joint employers. And in our brief, we address the four elements and try to convince the court that the conclusion from the district court is just wrong. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning, Your Honor. AUSA David Marborani Deyo on behalf of the appellee and co-defendant FEMA. Your Honor, I would like to- Just so I understand. Yeah. As you understand it, TCFI, the appeal is of the judgment also in favor of TCFI. I don't view it that way. They're obviously claiming against FEMA. At least almost all of the allegations they were presenting were all against FEMA. There was a judgment issued below in favor of TCFI against claims brought by FEMA. I know you're not their lawyer, so I'm just trying to understand what the case- I know you're a friend of the case, though. Yeah, I am. There was a summary judgment ordered by the district court in favor of TCFI vis-a-vis claims brought by claims against them, am I wrong? Yes. Am I wrong? No, there was a matter in the same court where there was a judgment issued against TFCI. In state court? In state court, correct. And then what happened? Then they brought in- then they got removed federal court after that? Yes, correct. And there's no federal court really addressing TCFI at all? In this case? Yeah. Well, yes, the court later ruled when they were in the judgment, what the court determined was that when TFCI was not covered by the interstate commerce nexus- And that's a ruling by the federal district court here. Correct. And that's why- And it's all summary judgment against plaintiffs, or it didn't catch up that way? No, it was against the plaintiffs. It's a summary judgment in favor of TFCI and against plaintiffs?  Okay. Then there was also a ruling in your favor?  Then there was a notice of appeal from the judgment? Yes. And that notice of appeal encompassed both rulings? I read it as if they were encompassing it against theme. Then why did you read it that way? Because every single allegation they were contesting FEMA's joint employer status. They were contesting the court's denial of their request for an appeal. I don't have a notice of appeal handy, but just the notice of appeal itself made it clear that they're only appealing the judgment as to FEMA? It seems that way. But, because it's a summary judgment, and it could be reviewed then and all, but it could encompass it if you want to view it in the broadest sense. Well, did the judgment itself from the district court encompass a judgment against FEMA? I mean, in favor of FEMA as well as Ant Iron Horse? Yes. With regards to the federal claims under the Fair Labor Standards Act, I do understand that there were some state claims that they did allow the applicants to pursue in state. So, in their notice of appeal, if they had just said we're appealing the order dated such and such, that order would have embraced a judgment in favor of FEMA as well as Iron Horse against the claim? Yeah. They were going against the summary judgment. That's what they appealed, right? Yeah. No, that's what I'm saying. Because if it's going to be an open review, then it would be to review the entirety of that summary judgment. Yeah. The TCFI is not here. Yeah. They're not. And I guess the reason I'm asking you this, in part, is Judge Thompson was asking whether there are aspects of the argument that the plaintiffs are making against you that necessarily would require us to overturn the judgment in favor of TCFI because of the way that they're arguing about potential interrelationships between the two of you, which can only get off the ground if TCFI itself qualifies as an enterprise. Right. You may have independent arguments for why you win anyway. Yeah. But some of their arguments, Judge Thompson was asking them, aren't they partially dependent on TCFI also qualifying under the FMLSA? Not really. No? No. But you could be a joint employer even if TCFI was not? Well, based on the statute, the way the joint employer is viewed is if you have the joint employer, the leading joint employer, exert some sort of control, then, of course, that's why there would be a joint employer status. If the person that is trying to be in the joint employer is excluded from that, then what they would have is just a claim against the actual employer. But they've, I was saying, they've tried to bring it against you as a joint employer, right? Yes. And we have proper defenses against not being a joint employer. Right. But I'm just asking, isn't one of those defenses that there's no one to be joint with because TCFI was found not to be? Or not? Well, yeah. That would apply as well. If there isn't a main employer, if there isn't a main employer to begin with, then... Then it's over, right? Yeah. We have a judgment saying TCFI is not an employer, don't we? Yes. Well, at least not that TCFI is not an employer, but that it's not covered under the Fair Labor Standards Act. And that's different than whether you can be a joint employer under that LSA. Correct. I see. Correct. Correct. So under that LSA, you could be an employer, and the other joint employer might not necessarily legally qualify. Is that what you're saying? As a joint employer? Correct. Yes? Yeah, because in order for you to qualify as a joint employer, and based on the base state factors, the economic reality test, you would have to have, at least in that regard, you would have to have the authority to hire and fire employees. Yeah, but that's for you to be a joint employer. Correct. To be a joint employer, there has to be another employer, right? Yes. Okay. That other employer doesn't have to be a covered entity, though? Under the FISA, yes. It does have to be a covered entity? I would deem it would need to be a covered entity. That's what I'm saying. So I thought we had a judgment here. Where they're not a covered entity. So then you're automatically, if they can't overturn that judgment, don't you automatically win on joint employers just for that reason alone? Yes. Okay, so what are we to do then? You don't seem to be making that argument. No, because all the- You have your other reasons for winning. But that would be, we can skip all those. Oh, yeah, that's what we like, the easiest thing. The easiest thing, which is one thing we like to do. But one thing that's odd about that here is they're saying the judgment against TCFI or TFCI is wrong, right? They have a judgment in favor of that an iron horse is wrong. Yes. And they're appealing that, potentially. They're representing it, they're appealing that. That's what they're representing. But we don't have iron horse anywhere to be seen to say whether they're right or wrong. So it's a bit confusing. In essence, even if we were to go, for example, even excluding- Okay, so let's put that aside. Even excluding camp iron horse, because there's obviously, with regards to the preliminary sentencing, we have the entity coverage and then the individual coverage. So as an entity, camp iron horse would be out. Like TFCI would be out. Under the individual coverage, that wouldn't apply either, simply because the employees don't meet the requirement of the interstate commerce sentence. Because they're not engaged in commerce or in the production of goods. That's not something that's done by the employees of camp iron horse. So either way, that would be out under the Fair Labor Standards Act. Even if they were trying to apply it to FEMA, which it wouldn't even hold. Do you want to just address, they had some allegations in their claim for the joint employer test that FEMA required certain uniforms to be worn and FEMA was directing day-to-day operations on the ground. That is incorrect. FEMA was not directing any type of work on the ground. As a matter of fact, there was no one from FEMA present when these employees were doing their tasks. All the tasks were assigned by either Monty Kiner, that was one of the principals of TFCI, or Sarah Gordon, or the supervisors that were assigned or named as supervisors by camp iron horse. What they mentioned with regards to being in a facility, that facility was a CRC, like a Consolidated Recovery Center. It was a facility for every single entity, nonprofits, SBA, we had the Department of Family Services from Puerto Rico, and it was just a consolidated area where FEMA, the only control they exerted was the facility. It would be like the same as this court where they require certain dress attire, and what you need, if I may continue, if what you need is to keep up a certain appearance, you can't be smoking in the facilities, but what was done and how it was managed was that FEMA was present, and what would happen is they gave these spaces for the nonprofits to be there to make it easier for the victims, for the survivors, so they could go there and get any services. What they would do, typically, was go to a FEMA booth. If they qualified for any type of FEMA assistance, and this is something that's crucial, because what camp iron horse or TFCI provided was assistance that was beyond what FEMA could provide. Did FEMA require them to use that facility? No, it wasn't necessary, but they were doing it for the assistance of the victim. What they were trying to do was get a place that was insolidated and was there. And did FEMA require, as part of the contract, the iron horse employees to be present at that facility? Not as part of the contract. Keep in mind, this was a grant. It's just that they wanted them to be at that facility then, and other providers that didn't use those facilities. Did they recommend that they would take away the funds if they didn't use them?  No, that was never mentioned. How was that communicated? It wasn't. It was just provided. Obviously, if they wanted to provide the services that were available to victims, because that's one of the things that they submitted in their proposal, that they were going to. They usually had it separated by region, and that they would try. I'm just going to ask the audience. You just need to be restrained as you're listening to me here. I'm scared. Don't say anything. Just continue with your argument. I'm scared. Do not say anything. Just continue with your argument. So what typically is done is they have the availability to go in different, because that's one of the things that they have. They could either use the consolidated recovery center, or they could go out on the street. And they did both things. They would use the consolidated recovery centers when they were in function. If they were not in function, they could go out and do their own assistance work out on the street. And that was something that they did commonly. The other issue where they mentioned that if they were in the, where they mentioned an email that if they were in the recovery center and FEMA would tell them to go home, that they had to go home, that is incorrect. That was just part of the rules of behavior. And in some instances, as everybody that was here knows, if there was a generator in the facility, the generator went out, there was no power. What they would have to do is close down the CRCs. But by the supervisors of Camp Iron Horse, and even by instructions in some instances of Marcy Kiner, the official of Camp Iron Horse, those employees weren't going to go home. They were told, okay, then you go out and canvass the streets and see if there is anyone that is in need of any additional assistance that FEMA can provide. Who told them to do that, to go out? FEMA? No. Oh, Camp Iron Horse? Camp Iron Horse, yeah. Anything further? Why did FEMA stop paying them? Excuse me? Why did FEMA stop paying them? Because they were not, they were complying with the grant conditions. Obviously, this was on a reimbursement basis. They were required to submit documentation to the court, the payments that they were doing to the employees, and they never complied with that. Thank you. Okay. If there isn't any questions, then thanks so much. Thank you, Counsel. This is a one-minute rebuttal. Counsel, please reintroduce yourself on the record to begin for that one minute. On the record, my name is April Perez, and I work for the Penitentiary Police. I would like to stress to the Court and pay attention to the brief, page 12. It is an issue raised in the opinion of the Court, but we reviewed the note. After more than four years of litigation, the Court raised the issue of F.L.A.'s Fair Labor Center's coverage of Calvary First and any rule that they would not follow. And the brief says, specifically, it is an issue raised in the opinion of the Court, and it must be reviewed by this Court, the note, because it was part of the order granting summary judgment. And not a confirmation by default, which is one of the things that we argued, which they didn't worry about. So, what precedes what's the judgment date? It is under obvious ruling, even if Calvary First was not on default for purposes of the opinion of the order stating this summary. Thank you. Thank you, Counsel. That concludes argument in this case.